ARNOLD J. MENNEMEYER and ANNA MENNEMEYER, Husband and Wife, Appellants, v. EDWARD HART, Administrator of the Estate of VIRGIL J. MENNEMEYER, Deceased, Respondent, No. 41229—221 S. W. (2d) 960.

Division One, July 11, 1949.

*Brevator J. Creech* for appellants.

*Moser, Marsalek, Carpenter, Cleary & Carter* and *G. W. Marsalek* for respondent.

DOUGLAS, J.—The question to be decided in this case is whether a parents' action for damages for the loss of services of their

minor ▉▉▉ son caused by his wrongful death survived the death of the wrongdoer, and could be brought against the latter's administrator, under the laws existing at the time of the death of the wrongdoer. The decision involves a supplemental question whether such loss of services is a wrong done to the parents' property rights.

The plaintiffs are the parents of Gregory Mennemeyer, a minor son, deceased. He was riding in an automobile driven by his brother Virgil when he was killed. Virgil died as a result of the same accident. Plaintiffs filed this action against the administrator of Virgil's estate. In their petition they state that Virgil was negligent in permitting his automobile to collide with a loaded truck causing Gregory's death. They then allege the value to them of Gregory's services on their farm from the time of his death up to the date he would have attained his majority. They deduct from the total value of his services' the estimated cost of supporting him for such period, and ask judgment for the balance, or $7,725.

▉ Plaintiffs assert they are proceeding under Section 98, R. S. 1939, Mo. RSA, which provides: "For all wrongs done to property rights, or interest of another, for which an action might be maintained against the wrongdoer, such action may be brought by the person injured, or, after his death, by his executor or administrator, against such wrongdoer, and, after his death, against his executor or administrator, in the same manner and with like effect, in all respects, as actions founded upon contract."

Under this section actions for wrongs done to property rights survive the death of the wrongdoer, and a plaintiff may proceed against his representative. On the other hand an action under the wrongful death statutes, Section 3652, et seq., R. S. 1939, Mo. RSA, did not survive the death of the wrongdoer. Therefore, if plaintiffs' action may be maintained under Section 98, it has been properly brought against the administrator of the wrongdoer. The trial court held otherwise, and dismissed the petition. We agree with the trial court. We hold this action is, in reality, a suit for wrongful death, and did not survive the death of the wrongdoer under the laws existing at the time of the latter's death.

Plaintiffs' reliance on Section 98 is based on an early decision of this court, James v. Christy, 18 Mo. 162. That case decided that a father has a property right in the services of his minor son, and therefore could recover under the section which then corresponded to Section 98 for damages for the loss of such services resulting from the wrongful death of the minor.

To understand the basis of the decision in the James case we must look to a prior decision because we find the statement in the James case: "That section [now Sec. 98] formerly underwent a discussion in this court, in the case of Higgins v. Breen. (9 Mo. 497.) That case settles the principles which will govern this. It was there held

that the statute extends to all acts by which personal property is lessened in value."

The Higgins case was a suit in contract for work and labor which had been performed under an implied promise to pay. Recovery was permitted under present Section 98 against the administrator of the promissor's estate on the theory a contractual property right was involved.

Therefore, if the principles of the Higgins case controlled the decision in the James case, as the opinion said, then the James case must have proceeded on the theory that the relationship between the plaintiff father and his minor son was the contractual relationship of master and servant. The reason which prompted the court to follow that theory was, no doubt, the rule that a master has a property right in the contract of employment with his servant. Therefore since that doctrine invested the father with a property right, his action survived under Section 98.

The doctrine of master and servant was thereafter applied to a parent and minor child in similar cases. In a discussion of the theory on which a parent may recover for the loss of services of his minor child we find in Dunn v. Cass Avenue Ry. Co., 21 Mo. App. 188, "The right to recover for the loss of services is predicated on the relation of parent and child." In a suit for the loss of services of a minor son it was later held that the petition must expressly allege the existence of the relationship of master and servant between the parent and the child. Matthews v. Mo. Pac. Ry., 26 Mo. App. 75. And see Burton v. Mo. Pac. Ry. Co., 32 Mo. App. 455 which held a petition was sufficient against the attack that there was no allegation that the son was the plaintiff father's servant. In Scamell v. St. Louis Transit Co., 103 Mo. App. 504, 77 S. W. 1021 it was stated that the right of a parent to a minor's earnings "originates not by virtue of the relationship of parent and child, but is based on the relationship of master and servant." To the same effect is Franklin v. Butcher, 144 Mo. App. 660, 129 S. W. 428.

However, we believe the better view is the modern and more liberal one, followed in other jurisdictions and now in this state, that the true ground of recovery by a parent in such cases arises from the reciprocal duty of the child to render to its parent such services or earnings as the latter may reasonably expect of it. See 39 Am. Jur., Parent and Child, § 74. See also 46 C. J., Parent and Child, § 79. This view does away with the necessity of proceeding in such cases on a false and fictitious relationship of master and servant.

In Evans v. Kansas City Bridge Co., 213 Mo. App. 101, 247 S. W. 213 the court adopted this view, and said the right of a parent to the services of a minor arises out of the duty of the parent to support the child. This theory is now recognized by statute by an amendment adopted in 1913, now a part of Section 375, R. S. 1939, Mo. RSA.

In Gilkeson v. Missouri Pac. Ry. Co., 222 Mo. 173, 121 S. W. 138 this court, refusing to apply Section 98 to a case for damages for the wrongful killing of a minor's father and mother, said: "According to all laws, excepting the cases before considered, the unlawful killing of a husband or father is a wrong done to the personal rights of the wife and child, and not to their property rights." See also Freie v. St. Louis-S. F. Ry. Co., 283 Mo. 457, 222 S. W. 824; Toomey v. Wells, 218 Mo. App. 534, 280 S. W. 441; and State ex r. Nat'l. Refining Co. v. Seehorn, 334 Mo. 547, 127 S. W. (2d) 418.

We believe it is equally true that the loss of services caused by the wrongful killing of a child is a wrong done to the personal rights of a parent and not to his property. It is as repellant to our present-day thinking to regard a child as the chattel or servant of his parent as it is to regard a wife as the chattel of her husband.

We hold that the right of a parent to a minor's services is in the nature of a personal right arising out of the family relationship, and is not a property right arising out of a pseudo contractual relationship. Therefore, Section 98 is not applicable since it relates only to property rights or interests.

For another reason we believe Section 98 is not applicable. It is our view that the wrongful death statutes first adopted in Missouri in 1855, and after the decision in the James case, provide the exclusive remedy in a case of this kind, and oust any right of recovery under Section 98 in actions for loss of services resulting from wrongful death. Now loss of services of a minor child is an element of damage definitely recoverable in actions under the wrongful death statutes. We have settled the rule the value of such loss is the measure of damage in an action by a parent for damages for the death of a minor child. See Leahy v. Davis, 121 Mo. 227, 25 S. W. 941; Rains v. St. Louis, I. M. & S. Ry. Co., 71 Mo. 164; Oliver v. Morgan (Mo.) 73 S. W. (2d) 993. In the latter case we said in reference to the damages recoverable for the wrongful death of a minor: "It is also clearly the law that the basis of the recovery is the value of the child's services to the parent during the child's minority. . . ."

In Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S. W. (2d) 920 the decision in the James case was criticized as being out of line even with common-law precedents. The common law refused to allow recovery of damages for wrongful death on the theory of loss of services. Discussing the adoption of Lord Campbell's Act allowing recovery for wrongful death, we said that Act was intended to be much broader in its scope than either the rejected theory of the right to recover for loss of services only because of the wrongful death of a husband or wife, parent or child, or the mere survival of the deceased's cause of action for his injuries.

It is well established that a remedy prescribed for a newly-created statutory right is preclusive, and must be followed. Stanton v. Thompson, 234 Mo. 7, 136 S. W. 698. We have indicated the statutory action for wrongful death is a preclusive remedy. Clark v. Kansas City etc. R. Co., 219 Mo. 524, 118 S. W. 40. Such being the case, this action may not be brought under Section 98, a statute of general application.

The rule is stated: "The special or specific statute circumscribes the effect of the prior general or broad act from which it differs, and operates to engraft thereon an exception to the extent of the conflict. Hence, a statute enacted for the primary purpose of dealing with a particular subject prescribing terms and conditions covering the subject matter, supersedes a general statute which does not refer to that subject, although broad enough to cover it." 50 Am. Jur., Statutes, § 563. And see State ex r. Equality S. & B. Assn. v. Brown, 334 Mo. 781, 68 S. W. (2d) 55.

In the Gilkeson case, supra, we stated that the claim of a minor for the wrongful death of his parents did not survive him under Section 98, even conceding the right to damages should be regarded as a property right, because of the later adoption of the wrongful death statutes which were of particular application to such actions. In holding the wrongful death statutes ousted the application of present Sections 98 and 99, we said: "It is perfectly clear from reading these statutes that the provisions of section 2864 [now 3652] provide specially who shall sue for and recover the penalty given thereby for the wrongful death of the parties referred to therein. It is thus seen that this particular statute provides specially and specifically for all who may sue for the penalty imposed by said section 2864, and neither the executor nor the administrator of·any deceased party referred to therein is included among those who are authorized to sue for the penalty. The entire matter is covered by that section, and excludes the application of any other statute thereto. While under the concession before made sections 96 and 97 [now 98 and 99] might be sufficiently broad, if standing alone, to embrace suits of this character, and if section 2864 is not to be considered an exception to the latter sections, then there would be clear conflict between them; and, since section 2864 was subsequently enacted, and all carried from one revision to another for over 50 years, we must hold it to be either an exception to the former sections or a repeal of them to the extent of their application to the actions mentioned in sections 2864 and 2865."

Clearly the wrongful death statutes govern the present action, and not Section 98. Since neither the wrongful death statutes nor any other applicable statute then provided that such an action as this should survive the death of the wrongdoer, it may not be now prosecuted against the latter's administrator.

But for the future the rule has been changed by an amendment to the statutes. Section 3670 has been amended to provide: "Causes of action for death shall not abate by reason of the death of a party liable for such death, but shall survive against the legal representatives of such party." Laws 1947, p. 225. This amendment came too late to apply to this case. It did not become effective until July 19, 1948, which was some time after the fatal accident on May 2, 1948, resulting in the death of both of plaintiffs' sons, the subject of the action and the wrongdoer as well.

A statute providing for the survival of an action is held to create a substantive right, not a rule of procedure. See Siberell v. St. Louis, S. F. Ry. Co., 320 Mo. 916, 9 S. W. (2d) 912. Unless there is a clearly expressed legislative intention to the contrary, which is not present here, such a statute is prospective, not retrospective, in its operation. See 1 CJS, Abatement and Revival, § 133. Consequently in determining whether a right of action survives the death of the wrongdoer, the statutes in force at the time of the wrongdoer's death, and not those at the time the action is pending, are controlling. Cf. Gorlitzer v. Wolffberg, 208 N. Y. 475, 102 N. E. 528. In this case at the date of the wrongdoer's death there was no statute authorizing the survival of plaintiffs' action against the wrongdoer's representatives so their action did not survive the wrongdoer's death. The later statutory amendment may not reach back to such earlier date.

Accordingly, the judgment dismissing plaintiffs' petition is *affirmed*. All concur.